# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**PENINSULA PROPERTIES, INC., et. al.**

        Plaintiffs,

v.                                                **Case No. 04-C-692**

**CITY OF STURGEON BAY, et. al.**

        Defendants.

---

### DECISION AND ORDER ON DEFENDANTS' MOTION
### FOR JUDGMENT ON THE PLEADINGS

---

On March 9, 2005, the defendants City of Sturgeon Bay and Waterfront Redevelopment Authority of the City of Sturgeon Bay ("defendants") filed a motion for judgment on the pleadings, seeking an order dismissing the 42 U.S.C. §1983 claims in the complaint of the plaintiffs Peninsula Properties, Inc., Lewis H. Krueger, Richard J. Giesler, and AAK Holdings, LLC., ("plaintiffs"). At the same time, a motion to dismiss was filed by the then defendant Guaranty Title Services, Inc. Subsequently, the plaintiffs and Guaranty Title Services entered into a stipulation for dismissal of Guaranty from this litigation, and the court signed an order to that effect. As a result, Guaranty's motion to dismiss is moot.

In their supporting brief, the defendants referred to facts outside of the pleadings, and the plaintiffs in response introduced declarations and exhibits in opposition to the motion. On April 6, 2005, the court conducted a status conference with counsel for the parties and it was agreed that the defendants' motion for judgment on the pleadings should be treated as a motion for summary

judgment since matters outside of the pleadings were relied on by the parties. An additional period of briefing was established in order to provide the parties with sufficient opportunity to treat the motion as one for summary judgment. All briefing has been completed and the motion is ready for resolution.

## BACKGROUND FACTS

Peninsula Properties, Inc. and the individual plaintiffs are engaged in the business of developing commercial and residential properties. For ease of reference, since two predecessor companies were engaged in the initial stages of this development project and subsequently assigned their interest to Peninsula, the court will refer to the plaintiffs as such, or as "developers." In 1996, the City of Sturgeon Bay entered into a contract with the developers to construct a hotel and convention center and condominium units as part of a redevelopment project on a portion of the City's waterfront. The City acquired the site and then conveyed it to the developers and received a mortgage and mortgage note in return.

The Development Contract required completion of the "facility" within 15 months from the conveyance date. The contract contained a "time is of the essence" clause and a penalty provision for failure to complete on time. The contract further provided that in addition to the hotel/convention center, the developers would construct residential condominium units, three buildings each containing six units. The parties immediately encountered problems which resulted in delays. Each party has its own and opposite version of the cause for these delays and who was responsible. Needless to say, it is these contrary versions of what occurred that forms the basis of this litigation.

According to the plaintiffs, the City was not able to promptly acquire the project site and thus was not able to convey it to the developers until July 30, 1997. In addition to this delay, additional delays occurred when the parties decided to change the plans for the hotel/convention center. According to the developers, they advised the City administrator that these changes would be beneficial to the project, but would cause delay in the completion date. When the revised plans were ready, the developers applied for a building permit for the hotel/convention center which was issued on October 14, 1998. At the same time, the developers applied for building permits for the three residential buildings, but the City did not act on these.

The plaintiffs allege that the City, acting in response to the various delays, informed the developers that the City would not issue the residential building permits until the developers agreed to a compressed completion schedule for the three buildings. The plaintiffs state that because it was essential to obtain the building permits, the developers agreed to execute a final amendment to the 1996 contract. As required by the amendment of April 23, 1999, the developers completed construction of two residential buildings in 1999 and the third in 2000.

The developers then took steps to sell the various units. Each unit was, of course, subject to the terms of the 1997 mortgage that the developers gave to the City. Here, the plaintiffs allege that the City again attempted to use its power to change the terms of the agreement between the parties. The plaintiffs state that City refused to release each unit from the mortgage when the unit was sold, as had been the practice, unless the developers agreed to apply 75% of the proceeds of each unit's sale to reduction of the mortgage or to payment of contract subcontractors. When one of the original developers, DCI filed for bankruptcy, the City refused to issue any releases for condominium units sold. Peninsula claims that the City's refusal extended for a two year period, even though Peninsula

3

did not file for bankruptcy. Finally, the plaintiffs claim that the developers were forced to repay the mortgage debt early in order to facilitate the sale of the units.

As noted above, the City takes a much different view of what transpired. First of all, the City says that the 1996 contract is clear in its obligation for the developers to complete construction of the "facility" within 15 months from the date the property was conveyed. The City says that the contract defines the facility as including the hotel/convention center and 18 residential condominium units. This means that the entire project was to be completed by October 31, 1998 and "time was of the essence." The City says this requirement was important, because it wanted to obtain real estate tax revenue from the completed facility within the agreed upon time frame. The City acknowledges that there were some initial delays in acquiring the project site and modifications to the site. The City alleges that Peninsula threatened bankruptcy if it did not receive concessions and it had not provided a performance bond as required. The City then said that it would not issue building permits until the performance bond was posted and it declined the developers' request to waive this requirement. Finally, a performance bond was received for the hotel/convention center and a building permit issued for that structure, but a performance bond was not received for the condominium units. Consequently, the City would not issue building permits for the three residential units.

According to the City, all of the disputes between the parties were addressed in various amendments to the contract, the last (seventh and final) being the April, 1999, amendment. Pursuant to that amendment, Peninsula agreed to construct two of the three buildings by the end of 1999 and the third by the end of 2000. Peninsula then provided a performance bond for the residential units in August, 1999 and the City issued the building permits.

Apparently, the various amendments did not resolve all of the disputes between the parties, because there was still the issue regarding partial releases of the mortgage. The City states that it was providing partial releases of the mortgage upon sale of a unit, but when DCI filed for bankruptcy, the City's security in the property was "eroded" by each sale. The City then refused to issue any more releases until additional principal was paid or the debt fully satisfied.

The court will discuss additional facts in conjunction with its analysis of the plaintiffs's 42 U.S.C. §1983 claims.

**SUMMARY JUDGMENT STANDARD**

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgement as a matter of law. FED. R. CIV. P. 56(c). As provided under Rule 56(c), only "genuine" issues of "material" fact will defeat an otherwise "proper" motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[M]aterial facts are those facts which, under the governing substantive law, "might affect the outcome of the suit." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. Id.

The movant bears the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970); see also Celotex Corp., 477 U.S. at 323. The moving party satisfies its burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson, 477 U.S. at 255; Cain v. Lane, 857 F.2d 1139, 1142 (7th

Cir. 1988); Spring v. Sheboygan Area School Dist., 865 F.2d 883, 886 (7th Cir. 1989). Further, "on summary judgment, a court can neither make a credibility determination nor choose between competing interests." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1041 (7th Cir. 1993).

If the moving party meets its burden, the nonmoving party then has the burden to present specific facts showing that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

**SECTION 1983 CLAIMS ANALYSIS**

In the complaint, the plaintiffs have raised several claims based on alleged violations of 42 U.S.C. §1983 that are being challenged by the defendants' motion for summary judgment. In Count 1 of the complaint, the plaintiffs allege that the defendant City of Sturgeon Bay used its municipal authority and improperly refused to issue building permits on the residential buildings in order to compel the developers to agree to a change in the construction deadlines. In Count 3 of the complaint, the plaintiffs allege that both defendants, the City and the Waterfront Redevelopment Authority arbitrarily refused to release their interest in the mortgage in regard to the sale of individual residential condominium units. The plaintiffs allege that the defendants' conduct was arbitrary and not related to any legitimate government interest and had the effect of denying the developers due process and equal protection of the laws. The complaint also raises state law contract and tort claims, which are not the subject of the defendants' motion, except to the extent that if the court grants the motion dismissing the § 1983 claims, the defendants urge that the state law claims be dismissed without prejudice, giving the plaintiffs an opportunity to pursue these in state court.

The position of the defendants is that, whatever disputes the plaintiffs have with the City and Waterfront Authority, they do not form the basis of "constitutional" violations, thus giving rise to

6

claims under §1983. At best, the plaintiffs have raised a number of claims that should be resolved by the state courts under the laws of contract. In support of their position, the defendants point to the contractual agreements between the parties, i.e. the January 26, 1996 Development Contract and its subsequent amendments and the July 30, 1997 mortgage and mortgage note. The defendants submit that all of the rights and obligations, including construction deadlines, between the parties are contained in these documents, and the City simply insisted on compliance by the developers. The City says that all of its actions were pursuant to contract and that a breach of contract claim is not a constitutional violation.

Addressing the specific alleged claims, the City contends that there is no constitutional right to the issuance of a building permit, so its alleged failure to issue same cannot constitute a violation of due process. Similarly, in regard to the alleged refusal to issue partial releases of the mortgage, the City says that it was acting pursuant to the language contained in the mortgage and mortgage note.

42 U.S.C. §1983 is the statutory vehicle for bringing actions in federal court for constitutional violations. It provides, in part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . .

First, for §1983 to apply, a defendant must have acted "under color of law." For purposes of the defendants' motion for summary judgment, the court finds that this requirement has been satisfied. Second, the defendants' alleged conduct must have deprived the plaintiffs of rights, privileges or immunities secured by the Constitution. The constitutional rights the plaintiffs allege have been violated are the right to due process of law and the right to equal protection under the laws.

7

### A. DUE PROCESS

A deprivation of property, as claimed by the plaintiffs, is actionable under §1983 when it occurs without due process of law. There are two types of due process violations: procedural and substantive. Procedural due process can occur when the process itself is lacking in fundamental procedural fairness, or in the exercise of authority without any legitimate governmental objective. Substantive due process protects against the exercise of arbitrary and oppressive government power. See, County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998).

The complaint in this case does not specify which type of due process violations the plaintiffs are alleging, but it reads more like substantive. For example, paragraphs 23b and 41c allege that the defendants imposed "arbitrary" conditions on the plaintiffs. In their brief in opposition to the defendants' motion, the plaintiffs are clearly discussing substantive due process. Plaintiffs' Brief in Opposition at p.17. On the other hand, the defendants in their response/reply brief raise the issue of adequate state law remedies and the case of Parratt v. Taylor, 451 U.S. 527 (1981), both of which involve procedural due process. Defendants' Response/Reply Brief at pp. 20-21.

In the event the plaintiffs are alleging a procedural due process violation with respect to the defendants' conduct, the court will first address this issue. In regard to the City's failure to issue building permits, the plaintiffs are unable to establish a violation of procedural due process. This is because there are adequate state law remedies that a person aggrieved by an adverse decision regarding the issuance of a building permit can pursue. The state law remedies are pointed out by the defendants in their response/reply brief. (Def. Response/Reply Brief at p.20.). In accordance with the seminal case of Parratt v. Taylor, supra, and its progeny, procedural due process claims should be dismissed if adequate post-deprivation remedies exist under state law. A state post-deprivation remedy is

8

considered adequate unless it can be characterized as meaningless or non-existent. See Easter House v. Felder, 910 F.2d 1387, 1406 (7th Cir. 1990).

A recent example of this concept, although in a much different factual context, can be seen in the case of Wall v. City of Brookfield, 406 F.3d 458 (7th Cir. 2005), in which the City allegedly deprived the plaintiff of her property without due process of law. More particularly, the plaintiff alleged that the local humane society picked up her dog and detained it for sixty days, based on numerous violations of a municipal ordinance. In that case, the only process that the plaintiff could have obtained would have been a post-deprivation hearing since her dog was snatched off the street. However, since such a hearing was feasible under Wisconsin law, the Seventh Circuit cited Parratt v. Taylor for the proposition that "[n]o more process than that was constitutionally required." Wall, 406 F.3d at 460.

In the more applicable context of a denial of a building permit, the Seventh Circuit has also addressed the issue of the adequacy of the remedy. In New Burnham Prairie Homes v. Burnham, 910 F.2d 1474, 1480 (7th Cir. 1990), the plaintiffs alleged that the village unfairly hindered their development plans by denying building permits for impermissible reasons (racial animus). The lower court's dismissal of the plaintiffs' procedural due process claims on the ground that state law provided adequate post-deprivation procedures to remedy any wrong suffered by the plaintiffs was affirmed. Id. at 1480.

This means that, if adequate state law remedies are available after the alleged deprivation of personal or property rights to provide the process that is constitutionally due, there is no claim for a violation of procedural due process. Therefore, in this case, the claim that the City arbitrarily and improperly denied the issuance of building permits to the developers does not qualify as a violation

9

of the plaintiffs' procedural due process, because of the existence of adequate post-deprivation remedies.

Parenthetically, the plaintiffs cite the case of <u>Patsy v. Board of Regents of the State of Florida</u>, 457 U.S. 496 (1982), for the proposition that "exhaustion of state administrative remedies" is not a prerequisite to an action under § 1983. While that is a correct statement of law, it is inapposite to the present situation. The issue before the court is whether or not the plaintiffs have alleged a violation of due process. As discussed above, no procedural due process violation exists if there is adequate post-deprivation process. <u>Patsy</u> started from the premise that a constitutional violation was present, and addressed the question of whether state exhaustion was required before proceeding in federal court.

In regard to the refusal to issue releases of partial mortgages, the answer is not as clear. Here, the position of the City is that it was not acting under "color of state law," but was simply acting in the capacity of a mortgagee. Under the facts of this case, the court is not persuaded by the City's position. The mortgage is too intertwined with the construction project for the City to be viewed as only wearing a "mortgagee's hat" when it came time to issue partial releases. The City initially acquired the site in order to convey it to the developers, taking back a mortgage as security. Transactions in regard to the satisfaction of the mortgage were simply the last part of the continuum in the relationship between the defendants and the developers. The court will not permit the defendants to escape the plaintiffs' due process mortgage claim based on the absence of acting under color of law.

Returning to whether or not this claim can be considered as a violation of procedural due process, in light of the case law, the defendants have failed to indicate which remedies exist under

10

state law to provide due process. For example, is there a procedure the plaintiffs could have invoked to be heard on the refusal to issue partial releases? It may be, as noted in <u>New Burnham Prairie Homes</u>, supra, that the developers could have resorted to state law mandamus procedures, but that was a case brought under Illinois law. Since this court declines to speculate as to possible post-deprivation remedies under Wisconsin law, the issue will be unresolved for the moment and the court will turn its attention to another due process violation - substantive due process. For if the plaintiffs are to support a §1983 due process violation for the City's refusal to issue the building permits, it will have to be under this theory.

The concept of substantive due process was discussed by the United States Supreme Court in the case of <u>County of Sacramento v. Lewis</u>, 523 U.S. 833 (1998), in which the parents of a motorcycle passenger killed in a high-speed police chase sued the county under §1983 alleging a deprivation of their son's substantive due process right to life. The Court stated that "the touchstone of due process is the protection of the individual against arbitrary action of the government." <u>Id</u>. at 845, citing <u>Wolff v. McDonnell,</u> 418 U.S. 539, 558 (1974). As stated earlier, a procedural due process guarantee protects against an arbitrary taking by the government, but the substantive due process guarantee protects against use of arbitrary and oppressive government power. <u>Id</u>. However, substantive due process only comes into play for "the most egregious official conduct [that] can be said to be 'arbitrary in the constitutional sense.'" <u>Id</u>. at 846 (<u>citing</u> <u>Collins v. Harker Heights</u>, 503 U.S. 115, 129 (1992)). For an abuse of executive power to reach a level that qualifies as a substantive due process violation, it must be such an abuse of power that "shocks the conscience." <u>Id.</u> Further, the <u>County of Sacramento</u> court cautioned that the "shock the conscience" standard is not one that will supplant traditional common law, and the substantive due process guarantee will not become a body of

11

constitutional law that imposes liability "whenever someone cloaked with state authority causes harm." Id. at 848.

Suffice it to say, most of the cases where the concept of substantive due process has been applied involve alleged violations of a person's constitutional rights, but the concept has been recognized in the context of property interests. See New Burnham Prairie Homes v. Village of Burnham, supra; Coniston Corp. v. Village of Hoffman Estates, 844 F.2d 461 (7th Cir. 1988). The Seventh Circuit has observed that the concept of substantive due process "is a difficult concept to pin down." Tun v. Whitticker, 398 F.3d 899, 902 (7th Cir. 2005). In fact, as the court commenced its discussion in that case, it commented as follows, "[t]his case requires that we once again wade into the murky waters of that most amorphous of constitutional doctrines, substantive due process." Id. at 900. This court will now wade into those murky waters.

### B. SUBSTANTIVE DUE PROCESS ANALYSIS

#### 1. Refusal to Issue Building Permits Claim

This court now turns to the facts of this case to determine whether or not the plaintiffs are able to sustain claims of substantive due process in regard to the refusal to issue building permits and the refusal to issue partial mortgage releases.

As briefly noted above, the parties' respective versions of what transpired in regard to this project is markedly different. Notwithstanding the different fact scenarios, the underlying position of the defendants is that all of the rights and obligations between the parties can be found in the 1996 contract and the seven amendments and the mortgage and mortgage note. The defendants submit that their actions were accordance with these unambiguous negotiated documents. While there seems to be a dispute as to whether the terms of these documents are as "unambiguous" as the defendants claim,

12

the crux of the plaintiffs' substantive due process claims center around the "negotiated" aspect of the documents.

While the plaintiffs in their reply brief take issue with many of the chronological "facts" set forth by the defendants in their response/reply brief, the basic scenario established by the plaintiffs is that the "negotiations" between the parties were actually an arbitrary exercise of the City's authority, to which the developers felt compelled to acquiesce. Basically, the plaintiffs contend that the City refused to issue building permits for the residential buildings unless the developers agreed to a new construction schedule. The plaintiffs allege that, as a result of the initial delays in acquiring the project site and the modifications in the design, the City and the developers had waived the "time is of the essence" requirement in the 1996 contract and the concomitant default remedies and had agreed upon a new schedule, one in which the construction of the second and third residential buildings would await consumer demand on the first. Then, despite this understanding, the City changed its position and arbitrarily used its power over the issuance of building permits to "force" the developers to agree to the various contractual amendments which established a deadline for the completion of all three buildings. The defendants submit that none of this evidence can be used because it violates the parol evidence rule. That is a rule to be applied under the law of contracts, but does not preclude the court from considering such evidence when assessing abuse of government power within the context of substantive due process.

In regard to the facts, the defendants, of course, present a scenario in which they attempted to deal with the developers' failure to comply with their contractual obligations by modifying the original contract through a number of amendments. When the developers failed to provide the required performance bond, the City felt its only recourse was to withhold issuance of the building

13

permits. In the alternative, the defendants respond that, even if the plaintiffs' allegations that the City acted improperly were given credence, the City's actions cannot be characterized as invidious or irrational. In other words, even if the City exercised poor judgment in refusing to issue building permits, its conduct does not rise to a violation of constitutional proportion. Comparing the defendants' position to the test for substantive due process, the question is whether, under the attendant circumstances, the defendants' conduct can be deemed to "shock the conscience."

As stated earlier, the scope of substantive due process is very limited and even more so when dealing with an alleged deprivation of property rights. As stated in Coniston Corp. v. Village of Hoffman Estates, "[n]o one thinks substantive due process should be interpreted so broadly as to protect landowners against erroneous zoning decisions." 844 F.2d at 466. Therefore, if a trier of facts found the defendants' version worthy of belief, it would appear that the defendants acted in the legitimate interests of the City and did not deprive the developers of their property rights by arbitrary or capricious action. Or, at the very worst, the defendants' conduct might be viewed as an exercise of poor judgment. But, there is a significant dispute over the material facts and when deciding a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion. Therefore, giving all reasonable inferences to the facts as presented by the plaintiffs, does the defendants' conduct shock the conscience?

This court believes that the plaintiffs have presented a viable case for a substantive due process violation. Under the factual scenario raised by the plaintiffs, it is simply not the refusal of the City to issue building permits, but the City's use of its authority in order to impose conditions upon the developers, conditions to which they did not want to agree and which harmed their financial and property interest in the project. In other words, this is not a situation where the government entity

14

failed to act because it exercised poor judgment, but it refused to act as a means to coerce a citizen to take unwarranted action. As alleged in the plaintiffs' version of the facts, this constitutes an abuse of authority which does shock the conscience. The court finds that the plaintiffs have stated a §1983 claim for a violation of substantive due process in regard to the failure to issue building permits, and it will deny the defendants' motion for summary judgment on this claim.

### 2. Refusal to Issue Partial Releases of Mortgage

In regard to the claim that the City refused to provide partial releases of the mortgage after the DCI bankruptcy, the defendants view this as a situation completely governed by the language of the mortgage. In particular, the defendants refer to a clause in the mortgage which states that the developers may not transfer, sell or convey "any legal or equitable interest in the Property . . .with the prior written consent of Mortgagee . . ." The defendants argue that they acted well within their contractual rights under the mortgage to withhold the further issuance of mortgage releases after DCI declared bankruptcy. This bankruptcy raised in the mind of the City a real concern with the financial viability of all of the developers. Certainly, the City contends, its actions in no way can approach the standard for a violation of substantive due process.

In response, the plaintiffs refer to paragraph 9a of the 1996 contract which provides that the developers may not "sell nor lease the entire hotel/convention center site or the premises without the prior written approval of the WRA, which shall not be unreasonably withheld." Paragraph 9a goes on to state, "[t]his subparagraph shall not require WRA approval for the sale or lease of any condominium unit or retail space." The plaintiffs argue that paragraph 9 of the 1996 contract thus acted as the "consent" required under the mortgage to convey an interest in the condominium units

and the practice prior to the DCI bankruptcy reflected this interpretation of the two documents by the parties.

As stated earlier, this court has rejected the defendants' argument that they were not acting under color of law when they refused to issue further partial releases of the mortgage. It is clear that this was part and parcel of the entire redevelopment project in which the City was certainly acting under color of law. That having been said, the arguments raised by the plaintiffs in both the initial brief in opposition to the defendants' motion and in the reply brief all sound in contract, rather than a violation of substantive due process. The plaintiffs first discuss interpretation of the two contract provisions under contract law, then evidence of the conduct of the parties in order to determine their intent, and finally, industry custom and practice.

In regard to a §1983 violation, the plaintiffs merely state that "§1983's protections extend to many breaches of contract." Plaintiffs' Brief in Opposition at p. 32. The plaintiffs submit that by refusing to issue partial releases of the mortgage, the defendants have deprived the developers of their rights in the 1996 contract, including their right to sell individual condominium units without restriction.

Even if a contract violation can deprive someone of property rights without due process of law, have the plaintiffs presented sufficient facts to sustain a claim under §1983 for a violation of substantive due process rights? Unlike the situation concerning the refusal to issue building permits, here the material facts are not really in dispute. The City does not disagree that it ceased issuing partial releases, but did so to protect its financial security in the project. The plaintiffs contend that Peninsula never filed for bankruptcy and that the City still had sufficient security in the project, but this goes more to the judgment exercised by the City than to conduct that "shocks the conscience."

16

In the court's opinion, nothing has been presented by the plaintiffs in response to the motion for summary judgment that reaches the threshold necessary to constitute arbitrary and capricious action. The court does not believe that a trier of fact could infer from the evidence presented that the City acted irrationally or that its actions would shock the conscience. Therefore, the court will grant the defendants' motion for summary judgment in regard to the plaintiffs' substantive due process claim in Count 3 of the complaint.

This, however, does not resolve the question of whether or not the plaintiffs are able to proceed on a claim of procedural due process in Count 3. Returning to the court's earlier discussion, the defendants have not shown that there were adequate post-deprivation remedies available to the developers when the City refused to issue partial releases. If adequate state law remedies were available, then there is no procedural due process violation; if not, the plaintiffs will be able to proceed on this claim.

At this juncture, all the court is able to do is to deny the defendants' motion for summary judgment on the claim of procedural due process without prejudice.

### C. EQUAL PROTECTION ANALYSIS

Both Counts 1 and 3 of the complaint allege a §1983 cause of action based on a denial of equal protection of the law. See paragraphs 23c and 41d. Although the defendants' motion for summary judgment seeks dismissal of the plaintiffs' § 1983 claims, neither party discusses the equal protection aspect of these claims.

A person bringing an action under the Equal Protection Clause of the Constitution must establish that he was discriminated against because of his membership in a particular class. See

17

Huebschen v. Department of Health and Social Services, 716 F.2d 1167, 1171 (7th Cir. 1983). Within the context of a denial of a building permit, the court in New Burnham Prairie Homes, supra, stated,

> In order to assert a constitutional claim based on violation of equal protection, a complaining party must assert disparate treatment based on their membership in a particular group. Discrimination based merely on *individual*, rather than group, reasons will not suffice.

910 F.2d at 1481.

In that case, the court rejected the plaintiffs' equal protection claim, because they were unable to show that they had been singled out for denial of the building permits on the basis that they belonged to a particular class.

The single allegation in the complaint that touches on the denial of equal protection argument is that the City has never imposed similar conditions "on similarly situated persons" Paragraphs 23c and 41d. This certainly fails to raise discrimination based on group membership. No facts are presented in opposition to the motion to summary judgment that would raise the inference that the developers were singled out for the alleged conduct because of their membership in a particular group.

The plaintiffs have failed to present any facts to support a violation of equal protection of the law, and in this regard, the defendants' motion for summary judgment will be granted.

**SUMMARY**

The court will grant the defendants' motion for summary judgment on the following claims: plaintiffs' §1983 claim for violation of procedural due process under Count 1, failure to issue building permits; plaintiffs' claim for violation of substantive due process under Count 3, failure to issue partial releases of the mortgage; and plaintiffs' claims for violation of equal protection of the law under both Counts 1 and 3.

The court will deny the defendants' motion for summary judgment on the following claims: plaintiffs' claim for violation of substantive due process under Count 1, failure to issue building permits; and plaintiffs' claim for violation of procedural due process under Count 3, failure to issue partial releases of the mortgage. The latter is denied without prejudice.

Since the motion did not deal with the state law claims contained in the complaint, they remain.

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment is **granted** as to the following claims:

1. Plaintiffs' §1983 claim for violation of procedural due process under Count 1, for failure to issue building permits;

2. Plaintiffs' claim for violation of substantive due process under Count 3, for failure to issue partial releases of the mortgage; and

3. Plaintiffs' claims for violation of equal protection of the law under both Counts 1 and 3.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment is **denied** as to plaintiffs' claim for violation of substantive due process under Count 1, for failure to issue building permits.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment is **denied without prejudice** as to plaintiffs' claim for violation of procedural due process under Count 3, for failure to issue partial releases of the mortgage.

Dated at Milwaukee, Wisconsin this 16th day of August, 2005.

s/AARON E. GOODSTEIN
United States Magistrate Judge