# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**PENINSULA PROPERTIES, INC., et. al.**,

              Plaintiffs,

v.                                     **Case No. 04-C-692**

**CITY OF STURGEON BAY, et. al.**

              Defendants.

## DECISION AND ORDER ON DEFENDANTS' MOTIONS AFTER VERDICT

On January 24, 2006, the jury returned its special verdict in favor of the named plaintiffs ("Developers") and against the defendants ("City"). The jury awarded the plaintiffs the sum of $481,007.00 as damages on the causes of action relating to plaintiffs' claims involving withholding issuance of building permits and awarded plaintiffs the sum of $48,022.00 as damages on the causes of action relating to plaintiffs' claims involving withholding issuance of partial mortgage releases. Judgment was entered accordingly, and on February 1, 2006, the defendants filed their post verdict motions pursuant to Rules 50 and 59, Fed.R.Civ.P. The plaintiffs filed a motion for attorney fees and costs pursuant to 42 U.S.C. § 1988. All matters are now fully briefed and ready for resolution.

**Rule 50 Motion**

The defendants have moved the court, pursuant to Rule 50(b), Fed.R.Civ.P. for judgment as a matter of law, or a new trial. Six grounds are presented, four which refer to the withholding issuance of building permit claims, and two which refer to the withholding issuance of partial mortgages

claims. More specifically, the defendants challenge the jury's answers to Special Verdict Questions 1, 3, 5, 7, 10 and 12.

The standard for granting a Rule 50 motion is to look to the record as a whole and decide "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, was sufficient to support the jury's verdict . . ." Davis v. Wisconsin Dept. of Corrections, --- F.3d ----, 2006 WL 1098183 at *4 (7th Cir. 2006); see also Harbor Motor Co., Inc. v. Arnell Chevrolet-Geo, Inc., 265 F.3d 638, 644 (7th Cir. 2001)(citing Lane v. Hardee's Food Sys. Inc., 184 F.3d 705, 707 (7th Cir.1999)). As stated by the Seventh Circuit, "[w]e will overturn a jury verdict for the plaintiff only if we conclude that no rational jury could have found for the plaintiff." Collins v. Kibort, 143 F.3d 331, 335 (7th Cir. 1998). In deciding this question, the court may not substitute its view of contested evidence for the view of the jury. Place v. Abbott Labs., 215 F.3d 803, 809 (7th Cir. 2000).

Prior to trial, the defendants raised legal challenges to the building permit and partial mortgage release claims, and the court issued decisions on the defendants' motion for judgment on the pleadings and motion for reconsideration. Based on the pretrial motions and the six days spent in trial, the parties are well acquainted with the facts and legal issues. Thus, in looking to the record to determine whether or not the verdict of the jury should be overturned, it is not necessary to engage in an extensive discussion of the facts or the law.

**Building Permit Claims**

The foundation for the City's challenge on these claims starts with its contention that the Developers did not apply for a regular building permit. If the Developers failed to apply for a regular building permit, there would be no support for the jury to find that the City either breached its duty

2

of good faith under the contract, or violated substantive due process, in withholding issuance in order to impose a compressed building schedule on the Developers.

The City contends that the Developers failed to comply with the applicable provisions of Wisconsin law and therefore did not submit a proper application for a multifamily building permit. Specifically, the City contends that the Developers failed to use proper forms, failed to supply required information, did not pay the permit fee and did not contemplate commencing construction within the 60 days required by the City Code. The City submits that, at best, the Developers only applied for an "early start" permit at the time in question. The defendants argue that the jury was not entitled to find in their answer to Special Verdict Question 1 that the Developers applied for a regular building permit in October, 1998.

In response, the plaintiffs point to what they submit is ample evidence in the record to provide support for the jury's finding. The court concurs with the plaintiffs on this issue. Richard Giesler, on behalf of the Developers, submitted a letter and other documents to the City on October 22, 1998. The letter specifically stated that the submission contained "the necessary information to obtain a Building Permit for the subject project. I am applying for a permit for all three buildings." Exhibit 45. Giesler testified that it was his intention to apply for a regular building permit and that it was the practice of the City to review a checklist submission from the builder and prepare the formal application based on the information presented. After the City had prepared the application, it would contact the applicant who would then sign the form and pay the permit fee. Giesler's testimony in this regard was not refuted by the defendants, and the evidence substantiates this practice. Exhibit 43 is the form application and permit prepared by the City on one day, and signed by Giesler on the following day.

3

Thus, the evidence establishes that the City had its own procedure for complying with state law in regard to the issuance of a building permit.

The same is true for the 60 day commencement of construction requirement. Giesler testified that the Developers wanted to start construction of the first of the three residential buildings immediately, but that the construction of the other two would depend on sales of units. While that could have occurred within 60 days, if it did not, Giesler said that he would seek an extension. The City's Code authorizes an extension (Exhibit 80), and there is no evidence from the City that it expected the Developers to commence construction of all three buildings within the 60 day period, even after it issued the building permit.

The jury heard all of the evidence and answered the first question on the Special Verdict. The jury found that the Developers applied for a regular building permit, and the jury's finding is supported by the evidence.

The next question that the jury was required to answer was whether the City withheld issuance of the regular building permit for the purpose of unilaterally imposing a compressed construction schedule on the Developers. The jury answered this question in the affirmative and then proceeded to Question 3 which asked whether the City's actions breached the duty to act in good faith. The jury also answered this question in the affirmative, and the City contends that this answer is not supported by the evidence.

Basically, the City contends that since the Developers had more than a reasonable amount of time within which to complete construction of the residential condominium units, the City did not breach the duty of good faith under the contract. The City's argument misses the point of the jury's findings. Based upon the evidence presented, the jury found that the City improperly withheld

4

issuance of the building permits to force the Developers to agree to a compressed construction schedule. Regardless of the ultimate construction time, it was the City's use of the building permits to coerce the Developers to accede to the City's demands that constituted the breach of the duty to act in good faith. The jury then proceeded to find that such breach damaged the Developers. Sp.Verdict Question 4. The same evidence supporting the jury's findings in answering Questions 1 and 2, also support their findings on the question of good faith.

The next challenge by the defendants to the building permit claims is to Question 5, where the jury found that the City's actions in withholding issuance of the regular building permit for the purpose of unilaterally imposing a compressed construction schedule violated substantive due process. As the jurors were instructed by the court, in order to find a substantive due process violation from the facts, the jury must find that the City's conduct was arbitrary and irrational, such as to "shock the conscience." The jury was also cautioned in that instruction that simply causing harm or merely exercising poor judgment does not constitute action that shocks the conscience.

This court discussed the concept of substantive due process extensively in its decision on the defendants' motion for judgment on the pleadings. As stated in that decision,

> [t]he scope of substantive due process is very limited and even more so when dealing with an alleged deprivation of property rights. As stated in Coniston Corp. v. Village of Hoffman Estates, "[n]o one thinks substantive due process should be interpreted so broadly as to protect landowners against erroneous zoning decisions." 844 F.2d at 466. Therefore, if a trier of facts found the defendants' version worthy of belief, it would appear that the defendants acted in the legitimate interests of the City and did not deprive the developers of their property rights by arbitrary or capricious action. Or, at the very worst, the defendants' conduct might be viewed as an exercise of poor judgment. . .
>
> This court believes that the plaintiffs have presented a viable case for a substantive due process violation. Under the factual scenario raised by the plaintiffs, it is simply not the refusal of the City to issue building permits, but the City's use of its authority in

5

order to impose conditions upon the developers, conditions to which they did not want to agree and which harmed their financial and property interest in the project. In other words, this is not a situation where the government entity failed to act because it exercised poor judgment, but it refused to act as a means to coerce a citizen to take unwarranted action. As alleged in the plaintiffs' version of the facts, this constitutes an abuse of authority which does shock the conscience. The court finds that the plaintiffs have stated a §1983 claim for a violation of substantive due process in regard to the failure to issue building permits, and it will deny the defendants' motion for summary judgment on this claim.

(Decision and Order, Aug. 16, 2005 at 14-15).

In its earlier decision, this court was of the opinion that this was a matter for the jury. Now, having heard the evidence presented at trial, the court stands by that decision - this was a matter for the jury, and the jury has spoken. There is no dispute that it was in the City's financial interest to obtain revenue from the project as soon as possible. There is significant dispute concerning the construction schedule when comparing the testimony of Richard Giesler with the testimony of John Krauss, the City administrator at the time. Giesler testified that he had discussions with Krauss about the revised plans and the sequential construction of the residential units. Krauss denies any such conversations. He testified that, even though the City knew that the Developers would not meet the original 15 month deadline, there was never any oral waiver of that deadline; the only changes in the deadline were made subsequently when the contract was amended in writing. According to Giesler, these are the amendments that were forced upon the Developers. The evidence presented a classic case of credibility - who should the jury believe? From their verdict, it is obvious who they believed, and there is substantial evidence in the record to support their determination.

Finally, in regard to the building permit challenges, the defendants argue that the damage award in Question 7 is not supported by the evidence. Regarding the issue of damages, the plaintiffs opted to retain an expert who was asked to evaluate the financial loss suffered by the Developers as

6

Case 1:04-cv-00692-AEG   Filed 05/08/06   Page 6 of 15   Document 131

a result of the compressed construction schedule. William Rewolinski presented his report and attached schedules to the jury. The City chose not to engage its own expert and defendants' attorney only briefly cross-examined Rewolinski. Instead, the defendants now argue that plaintiffs are not able to recover damages to the extent awarded by the jury, because the time frame utilized by the expert to calculate damages was not foreseeable as a probable result of the breach. The expert based his calculations on the period of 1999-2004, and the City argues that it would have never granted the Developers such a lengthy period of time within which to complete construction of the three units.

The concept of "foreseeability" of damages is common to breach of contract cases, but it also applies to a case brought under 42 U.S.C. § 1983. So, for example, when an illegal arrest sets off a chain of events inflicted on the victim, that person is entitled to damages that are foreseeable consequences of the illegal conduct. See, Herzog v. Village of Winnetka, Ill., 309 F.3d 1041 (7th Cir. 2002). The question here is not the length of time the parties would have agreed upon for the completion of construction, absent the City's coercion, but what damages naturally flowed as a result of such improper conduct? Rewolinski answered this question.

The jury was specifically told that the Developers must prove their damages, and they could only return an award based on the evidence, and not on guesswork or speculation. The plaintiffs offered evidence to show why damages extended through 2004, all as a result of the compressed construction schedule. In fact, Rewolinski testified that he made gave credit to the defendants for such items such as inflated costs had the Developers been allowed to proceed on their own schedule.

The bottom line here is that the defendants, for whatever reasons, chose not to retain their own damage expert. Maybe the City felt that it was not worth the litigation costs to engage in a battle of experts on this issue and instead concentrated on liability. Unfortunately for the City, it lost the

7

liability battle, and the evidence presented by the plaintiffs fully supports the damages awarded by the jury.

**Partial Mortgages Claims**

Questions 10 and 12 of the Special Verdict are challenged by the defendants. Question 10 again deals with the concept of the implied duty of good faith, but in regard to the City's failure to issue partial releases of the mortgage after Door County Investments ("DCI") filed for bankruptcy. Question 12 deals with another due process claim, but this one for violation of procedural due process regarding withholding issuance of the partial mortgage releases.

In answer to Special Verdict Question 8, the jury found that the contract between the parties did not require the City to issue partial mortgage releases as individual condominium units were sold. However, the jury found that the contractual implied duty of acting in good faith required the City to issue such partial releases. The evidence is clear that the sales of the individual residential units could not be completed without the City issuing partial mortgage releases. Further, the City did issue such releases as units were sold until the time that DCI, one of the several entities involved in the development, filed for bankruptcy in 2002. The position of the City is that after DCI declared bankruptcy, it was justified in refusing to continue issuing partial mortgage releases. The City contends that the bankruptcy threatened its financial security under the mortgage, because with the sale of each unit thereafter, its security in the mortgage would be eroded unless it received partial proceeds from the sale. The City also argues that the default of DCI on its primary loans operated as a cross default under the mortgage. Finally, the City presented the testimony of Timothy McCoy, its expert on real estate practice, who stated that the agreement between the parties did not require the

City to issue partial mortgages, and that, even though an implied good faith obligation to do so exists, such an obligation ceased upon bankruptcy.

The Developers respond that the City never exercised the "cross default" provisions of the mortgage; they state that they were never in default on the mortgage itself, and the City never formally declared the mortgage in default. The Developers point out that at the time that DCI filed for bankruptcy, annual payments on the mortgage were current so the City was not in financial jeopardy. The Developers also point to the testimony of their real estate expert James Hammes, who stated that unless the contract so provides, the Developers were not required to make partial payments to the City upon the sale of each unit. As to any possible financial jeopardy, Hammes said that the City should have provided for such eventuality in the contract.

Turning specifically to the jury's answer to Question 10, the court is of the opinion that the verdict is supported by the evidence. Based upon the testimony of both real estate experts, it was clear to the jury that an implied good faith duty to issue partial releases of the mortgage upon the sale of individual units existed. The question was whether the bankruptcy of DCI excused the City from its obligation. The City argued that it would be in financial jeopardy, despite the fact that the annual payments on the mortgage were current. There is sufficient evidence in the record for the jury to have concluded that the financial fears of the City were not realistic. For example, even if all of the residential units were sold prior to full payment on the mortgage, the City still maintained security in the Convention Center, which was worth several million dollars. There is also sufficient evidence for the jury to have concluded that since the City failed to protect itself by contract, it was an act of bad faith to use self-help by refusing to issue partial releases. Whether the jury proceeded down one road or the other, the record contains sufficient evidence to support their finding on the issue of good faith.

9

In regard to Question 12, the jury found that the City violated the Developer's procedural due process rights in the manner in which it dealt, or failed to deal, with the Developers. Here, the defendants first urge the court to reconsider its prior decisions regarding the existence of a claim for procedural due process. The defendants' legal arguments were fully considered, discussed and rejected in the court's decisions of August 16, 2005 and November 18, 2005 (Decision and Order on the Defendants' Motion for Reconsideration). This includes the application of Wis. Stats. § 706.05(9), which was the subject of the defendants' reconsideration motion, and is again raised in their motions after verdict. There is no point going over the same ground.

Turning to the evidentiary support for the jury's verdict, the defendants submit that the City provided the Developers with a meaningful opportunity to be heard after it refused to issue any more partial releases. The City indicates that there were a variety of meetings and correspondence on this subject; the fact that the City rejected the Developers' proposals does not mean that the plaintiffs were not provided with an adequate post-deprivation remedy. The plaintiffs' disagree with the defendants' view of the evidence, basically stating that they were stonewalled by the City. In other words, there was no "meaningful" opportunity to be heard.

The court instructed the jury that the "key to procedural due process is that the deprived party has the opportunity to be heard at a meaningful time and in a meaningful manner." The jury was further told that they must look at the particular circumstances of each case, and they were given some specific guidelines to assist them in making their determination. Finally, the jury was told that a meaningful opportunity to be heard "does not require any particular level of formality; in other words, the process can be informal."

10

Case 1:04-cv-00692-AEG   Filed 05/08/06   Page 10 of 15   Document 131

The fact that an informal process is sufficient to satisfy the requirement for procedural due process is particularly applicable to the evidence presented in this case. The jury was able to consider the exact nature of the meetings and correspondence between the parties to determine whether the City did indeed provide the Developers with a meaningful opportunity to be heard. Simply rejecting the Developers' proposals would not be sufficient; the jury had to be convinced that the City was not really listening, and that the City did not really provide a forum within which the Developers could be heard. The evidence in the record is more than sufficient to support either party's version. The parties argued their contrary positions based on the same evidence, and the jury accepted the scenario presented by the plaintiffs. End of story.

For all of the foregoing reasons, the court will deny the defendants' Rule 50 motion. The defendants are not entitled to judgment as a matter of law or, in the alternative, a new trial.

**Rule 59 Motion**

The defendants present the same grounds for granting a new trial or amending the judgment pursuant to Rule 59 as they did under Rule 50. The standard for granting a Rule 59 motion is no less exacting. A new trial may be granted where the verdict is against the great weight of the evidence, where damages are excessive, or for some other reason that establishes that the trial was not fair to the moving party. Mid-America Tablewares v. Mogi Trading Co., 100 F.3d 1353 (7th Cir. 1996).

Nothing further need be said, since the court is of the opinion that the jury's verdict is fully supported by the evidence in all respects. This is not a verdict that "resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks the conscience." Latino v. Kaizer, 58 F.3d 310, 314 (7th Cir. 1995).

In 1996, the City of Sturgeon Bay decided to substantially improve a neglected portion of its waterfront. What ultimately resulted was an outstanding development known as Stone Harbor, which houses a convention center and adjacent residential units. An unfortunate by product of this project was this contentious hard-fought litigation. The parties were unable to resolve their dispute and ultimately presented their respective accounts to a jury. The jury listened to all of the evidence and made its decision. That decision should be affirmed.

The defendants' Rule 59 motion will also be denied.

**<u>Plaintiffs' Motion for an Award of Attorney Fees and Costs</u>**

Following the conclusion of the jury trial, the plaintiffs filed their motion, pursuant to 42 U.S.C. § 1988 for an award of attorney fees and costs. The Developers request the sum of $246,917.02 in attorney fees and $28,552.52 in costs and disbursements, for a total of $275,469.54. In support of their motion, plaintiffs attach affidavits from attorneys Daniel Hildebrand and Joseph Ranney. Attached to Ranney's affidavit are copies of the law firm's invoices in this litigation, together with a summary description and explanation of the services rendered. Plaintiffs' attorneys Schoenfeld and Ranney are charging attorney fees at the rate of $230.00 per hour.

The defendants oppose the award of attorney fees in the amount requested. It is the position of the City that plaintiffs' counsel have over billed for their efforts. For example, defendants' counsel Richard Carlson states that while he participated in the same "hard fought" litigation, attended the same depositions and participated in the same trial, he billed his client only 598 hours, while the time billed by opposing counsel is double his number, and then some. The City believes that a close analysis of plaintiffs' invoices will disclose a redundancy of effort by plaintiffs' attorneys, together with time spent on tangential matters for the Developers. On this point, Carlson notes a foreclosure

12

action filed in Door County Circuit Court, which was dismissed subsequent to the billing in this case. Carlson also notes litigation between the Developers and Keith Van Dyke and a subsequent criminal charge and conviction of Van Dyke, who was working for the City at the time. Finally, Carlson suggests that attorneys Schoenfeld and Ranney billed for a significant number of conferences between themselves. The City urges the Court to reduce the petition for fees by twenty percent.

The plaintiffs reply to the City's opposition by responding to each area challenged. In regard to tangential litigation, plaintiffs' counsel state that the fees requested include no work devoted to the other lawsuits. As an example, plaintiffs point out that references on the invoices to conferences with Stephen Glynn, a criminal defense attorney, were excluded in computing the fee request. Concerning conferences between the two attorneys, plaintiffs cite case law holding that such time is recoverable, as long as it is reasonable and necessary to effectively litigate the case. As far as the disparity in hours devoted to the case between opposing counsel, plaintiffs' counsel indicate that they had the burden of proof in the case and elected to obviously devote more time to its prosecution. Finally, plaintiffs contend that it is improper for the defendants to urge that the court arbitrarily reduce the request, and that it is incumbent upon the defendants to show why specific entries are improper.

Both parties agree that the plaintiffs were the prevailing party in this action and, as such, are entitled to attorney fees under § 1988. They also agree that reasonable attorney fees are to be determined using the lodestar approach, which involves a determination of the number of hours reasonably expended multiplied by a reasonable hourly rate. Thereafter, the court is able to increase or discount the lodestar based on a number of factors.

Starting with the second prong of the lodestar, the court finds the rate of $230.00 per hour reasonable. Even though defendants' counsel is a partner in his Appleton, Wisconsin law firm, and

13

billed the City at the rate of $135.00, he does not really take issue with the higher rate. Further, the affidavit of Daniel Hildebrand, an experienced lawyer in his own regard and a past president of the Wisconsin State Bar, supports the reasonableness of the rate. Of course, Hildebrand is not unbiased, being a partner in the prevailing party's law firm, but this court concurs with his representations regarding the hourly rate charged. It is reasonable for this case.

The defendants' main challenge attacks the first prong of the lodestar, the reasonableness of the time devoted to this matter. Here, the court has considered the specific items noted by the City and has very carefully reviewed the invoices submitted. This court has rarely seen such a comprehensive presentation in support of attorney fees. As Ranney represents in his supporting affidavit, items not related to the litigation have been excluded from the computation. However, thoroughness in presentation, by itself, is not sufficient. It is the content that matters. The court is persuaded by the plaintiffs' submission as to the reasonableness and necessity of the time counsel devoted to this litigation. While attorneys Schoenfeld and Ranney did confer with other, the time spent in such conferences does not appear excessive. More importantly, they split their duties during discovery and pretrial preparation without duplication of effort. In other words, only one attorney attended a deposition, prepared a witness or worked on a legal brief. During the trial, they also split their efforts.

Defendants ask the court to reduce the request by twenty percent to a total amount of $226, 086.13. But there is no support for the defendants' request. The court cannot reduce the plaintiffs' petition by an arbitrary amount, even if the end result is still a substantial sum. As the prevailing party on certain types of claims, the law permits plaintiffs to recover reasonable fees and costs. Their petition represents just that - fees and costs that were reasonable and necessary for the

prosecution of this litigation. Therefore, the court will grant the plaintiffs' motion for attorneys' fees and costs in the amount requested.

**IT IS THEREFORE ORDERED AS FOLLOWS:**

1. The defendants' motion pursuant to Rule 50 is **denied;**

2. The defendants' motion pursuant to Rule 59 is **denied;** and

3. The plaintiffs' motion for attorney fees and costs is **granted**. The judgment in this case shall be amended to provide that, pursuant to 42 U.S.C. § 1988, the plaintiffs recover the sum of $246,917.02 in attorney fees, $28,552.52 in costs and disbursements, for a total of $275,469.54.

Dated at Milwaukee, Wisconsin, this 8th day of May, 2006.

s/AARON E. GOODSTEIN<br>
U.S. MAGISTRATE JUDGE